**STATE of Tennessee, Appellee,**

v.

**Larry ELDER, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

May 14, 1985.

Jeffrey S. Henry, Murfreesboro, for appellant.

W.J. Michael Cody, Atty. Gen., Bettye Springfield-Carter, Asst. Atty. Gen., Nashville, Guy R. Dotson, Dist. Atty. Gen., William C. Whitesell, Asst. Dist. Atty. Gen., Murfreesboro, for appellee.

## OPINION

DUNCAN, Judge.

The defendant, Larry Elder, was convicted of assault with intent to commit rape. He was sentenced as a Range I standard offender to the custody of the Department of Corrections for six (6) years, his sentence to be served in the Rutherford County Workhouse.

In this appeal, the defendant says the trial court erred in allowing testimony as to the habits and customs of the victim, claims the trial court erred in charging the lesser included offense of attempt to commit rape, and argues that the trial court committed error in sentencing him. We find no merit to these complaints.

The twenty-one (21) year old victim, Debra Smith, is a resident at the Louisa Developmental Center where she lives in a ward for low-level mentally retarded individuals.

John Angelopoulos, the assistant administrator at Louisa Developmental Center, is a licensed psychological examiner responsible for the psychological assessments of the residents. At trial, Mr. Angelopoulos described the victim as follows:

Debra is considered to be profoundly retarded in both measured intelligence or intellectual abilities and adaptive behavior. In her intelligence she functions equivalent to what you would expect to see in a normal, healthy one-and-one-half to two year old. To be exact, her mental age, even though she is twenty-one right now, chronologically, she functions equivalent to a child of 1.8 years.

In terms of adaptive behavior, which is the things that she can do for herself, she has very, very few skills and is also profoundly retarded and requires staff assistance and probably functions within the two to three year old level.

Mr. Angelopoulos testified that, in his opinion, the victim does not understand reasoning and is unable to make decisions. He further said that she "does not have the concepts regarding right and wrong."

Chana Marie Frazier testified that on August 28, 1982, she was employed as a developmental technician at Louisa Developmental Center. Ms. Frazier worked in the "yellow unit" where the victim lived. Ms. Frazier testified that on August 28, 1982, she was getting the residents out of bed and into their wheelchairs. The victim was already up and was sitting in a hallway at this time. Ms. Frazier said she heard a door close and she "looked outside to check in the hallway on Debbie because Debbie has a tendency to run off." Ms. Frazier discovered that the victim was no longer in the hallway, and when she went to the victim's room, she found the defendant standing beside the victim's bed. The victim was lying on her bed with her legs up in the air, and her shorts and underwear were piled on the floor at the front of the bed. Ms. Frazier said the defendant "jumped" and looked at her. She saw the defendant make a motion with his hand and zip up his pants. Ms. Frazier said that she also heard the zipping sound.

Ms. Frazier also testified that after she redressed the victim, the defendant followed her out into the hallway and asked her not to tell because he needed his job.

The State's evidence further showed that the defendant's assignment that day was not in the "yellow unit" but was in the "blue and brown units" which were located on the other side of the building. According to Lois Onyebaugh, the general supervisor, the defendant asked her to give him another chance.

In the defendant's first issue, he argues that the trial court erred in allowing the State's witness, Ms. Frazier, to testify about certain habits and customs of the victim.

■ At trial, Ms. Frazier testified, over the defendant's objection, that when the victim undressed, she would "pull everything off and either throw them out in the hallway or throw them in somebody else's room, something like this."

The defendant argues that the State failed to lay a proper foundation for the introduction of this habit and custom evidence. We disagree. Ms. Frazier testified that she worked with the victim on a daily basis, five days a week, for the entire one and one-half (1½) year period in which she was employed by the Louisa Developmental Center. During this period, Ms. Frazier personally observed the manner in which the victim undressed herself.

This Court has held the following regarding the admissibility as to evidence of habit or custom:

Where the circumstances of a case suggest that the habit is of sufficient regularity that it is probable that the habitual activity would be carried out in almost every instance, the probative value of habit evidence is sufficient to render it admissible to prove a particular act.

*Cable v. Russell,* 2 Tenn.Cr.App. 363, 454 S.W.2d 163 (1969); *see also* D. PAINE, TENNESSEE LAW OF EVIDENCE §§ 29–30 (1974).

■ Habit or custom is admissible to show conduct on a particular occasion. *Cable v. Russell, supra.* Ms. Frazier's observation that the victim always removed all of her clothes when she undressed suggests that this was the victim's regular manner of disrobing. It was not error for the trial court to allow the introduction of Ms. Frazier's testimony to support an inference that the victim did not remove her own shorts and underwear on the occasion in question.

Next, the defendant claims the trial court erred in charging the lesser included offense of attempt to commit rape. The defendant submits that the trial court could only charge the jury as to the offense alleged in the indictment, i.e. assault with intent to commit rape.

As we interpret the trial court's charge, he instructed the jury on assault with intent to commit rape, and the lesser included offenses of attempt to commit a felony, to-wit rape, assault and battery, and assault.

■ Embraced in the offense of assault with intent to commit rape is the lesser included offense of attempt to commit a felony. *See State v. Staggs,* 554 S.W.2d 620 (Tenn.1977); *Clark v. State,* 214 Tenn. 555, 381 S.W.2d 898 (1964); *Jones v. State,* 200 Tenn. 429, 292 S.W.2d 713 (1956). Thus, the trial court committed no error in charging on this lesser offense.

In the defendant's final argument, he says that the trial court failed to make specific findings of fact upon which the sentencing principles were based. He also claims that the trial court failed to properly weigh the mitigating and enhancement factors and that his sentence is excessive.

The trial court heard the defendant's motion for a new trial and held the sentencing hearing in the same proceeding. At that time, the trial court took cognizance of two (2) enhancement factors: the victim of the offense was particularly vulnerable because of her age or physical or mental disability, and the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement. T.C.A. § 40–35–111(4) and (7) (1982). The trial court also considered a report containing the results of a psychological evaluation that had been conducted on the defendant.

■ We conclude that the record sufficiently shows the trial court's findings and that the mitigating and enhancement factors were properly weighed. The record demonstrates that the trial court substantially complied with the requirements of the Sentencing Reform Act. We agree with the trial court that the defendant's sentence of six (6) years was an appropriate sentence in this case.

The judgment of the trial court is affirmed.

BYERS and BEASLEY, JJ., concur.